**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **IN RE MISSION HEALTH ANTITRUST LITIGATION** | **No. 1:22-cv-00114-MR**<br><br>**Chief Judge Martin Reidinger** |

# <u>REDACTED PUBLIC VERSION</u>

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

IN RE MISSION HEALTH
ANTITRUST LITIGATION

No. 1:22-cv-00114-MR

Chief Judge Martin Reidinger

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO COMPEL THE HCA DEFENDANTS TO PRODUCE DOCUMENTS

# TABLE OF CONTENTS

**I. BACKGROUND** ................................................................. **2**

**II. LEGAL STANDARD** ....................................................... **5**

**III. ARGUMENT** ................................................................... **6**

    A. THE HCA DEFENDANTS MAY NOT WITHHOLD RESPONSIVE CUSTODIAL DOCUMENTS PRE-DATING THE MISSION HEALTH ACQUISITION. ..................... 7

    B. RULE 26(B)(1) SUPPORTS PRODUCTION OF THE PRE-2019 DOCUMENTS ......... 12

**IV. CONCLUSION** ............................................................... **17**

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO COMPEL THE HCA DEFENDANTS TO PRODUCE DOCUMENTS

Plaintiffs City of Brevard, North Carolina; Buncombe County, North Carolina; City of Asheville, North Carolina; and Madison County, North Carolina (collectively, "Federal Plaintiffs")[1] move this Court (the "Motion"), pursuant to Federal Rule of Civil Procedure 37(a), to compel Defendants HCA Healthcare, Inc.; HCA Management Services, LP; HCA, Inc.; MH Master Holdings, LLLP; MH Hospital Manager, LLC; and MH Mission Hospital, LLLP (collectively, the "HCA Defendants," and individually each an "HCA Defendant") to produce documents responsive to Plaintiffs' requests for production ("Requests")[2] as set forth below. Specifically, Plaintiffs respectfully move this Court to compel the HCA Defendants to collect documents from the appropriate custodians for the time period of January 1, 2017 through February 1, 2019 (the earliest date the HCA Defendants agreed to search) and search those collections for documents responsive to the Requests.

---

[1] The Federal Plaintiffs are, collectively with the plaintiffs ("State Plaintiffs") from the coordinated state court case, *Davis v. HCA Healthcare, Inc.*, No. 21-cvs-03476 (N.C. Bus. Ct.) ("*Davis*"), "Plaintiffs."

[2] The Requests are the Federal Plaintiffs' First Set of Requests for Production of Documents to All Defendants ("Federal Requests") (Apr. 26, 2024), *In re Mission Health Antitrust Litig.*, No. 1:22-cv-00114-MR (Ex. A) and the State Plaintiffs' Third Set of Requests for Production to All Defendants ("State Requests").

Pursuant to the parties' Stipulated Joint Coordination Order, ECF No. 88 at 6, this Motion concerns parallel discovery disputes both in this matter and in *Davis*. The parties in both matters have coordinated their discovery efforts, and State Plaintiffs affirm this Motion in all respects as it applies to discovery in the *Davis* matter subject to oversight by Judge Davis as per the Stipulated Joint Coordination Order. Counsel for each party have conferred in good faith to attempt to resolve the specific disputes described below but remain unable to reach agreement.

The parties have reached this impasse because the HCA Defendants refuse to search for or produce any documents from prior to the date of their acquisition of Mission Health. Their position is based on the fiction that none of the conduct by HCA Defendants that pre-dated this acquisition could be relevant to Plaintiffs' claims, and that *all* pre-acquisition documents—including any internal analyses, discussion, and considerations of Mission Health and the healthcare market that the HCA Defendants planned to enter—must therefore be shielded from view. As explained below, the HCA Defendants cannot show, as they must, that the custodial search period should be severely limited as they have proposed.

## I.    BACKGROUND

On February 21, 2024, this Court denied the HCA Defendants' motion to dismiss the Federal Plaintiffs' Complaint. ECF No. 67. Thereafter the Court

ordered the parties to commence discovery, setting the completion of discovery deadline for December 31, 2024. ECF No. 82. Plaintiffs promptly served document requests (and nonparty subpoenas) and began diligently meeting and conferring with Defendants, including concerning the HCA Defendants' objections and responses to the Requests, with the goal for all parties to make timely and comprehensive document productions.[3]

While the parties have eliminated several potential disputes through compromise, one dispute remains at impasse and is ripe for the Court's adjudication: the HCA Defendants' refusal to run custodial searches or produce relevant documents pre-dating their approximately $1.5 billion takeover of the Mission Health system on February 1, 2019.[4] This refusal to search for the requested documents within this time period prejudices Plaintiffs' ability to timely and appropriately prosecute their case.

Plaintiffs allege an anticompetitive scheme dating back to years before the HCA Defendants' takeover of Mission Health, including before and after the termination of the antitrust immunity granted to Mission Health through the Certificate of Public Advantage ("COPA"). Consolidated Class Action Complaint

---

[3] For example, the parties met on June 27, 2024 and July 16, 2024 and have since exchanged several letters, *infra* n.6, setting forth various positions regarding the relevant time period for the Requests.

[4] The HCA Defendants' acquisition of Mission Health closed on January 31, 2019.

("Federal Complaint") ¶¶ 1–11; 60–77; 119–24. Plaintiffs allege that the conduct of the HCA Defendants (and the ANC Defendants,[5] which are not parties to this Motion), among other things, substantially degraded healthcare quality and increased healthcare costs, thereby diminishing the quality of life in Western North Carolina and causing Plaintiffs to incur overcharge damages. Federal Complaint ¶¶ 2, 4–12, 21–23. The HCA Defendants may not have been able to execute this scheme until they acquired Mission Health, on January 31, 2019. However, that acquisition was no spur-of-the-moment decision. Top executives sought out the Mission Health system and Western North Carolina as particularly susceptible to their anticompetitive scheme in restraint of trade. Federal Complaint ¶¶ 12; 74–77; 84–89; 111–18. Accordingly, documents regarding the HCA Defendants' pre-acquisition analysis of the healthcare market in Western North Carolina and discussions regarding their decisions to acquire the Mission Health system (supercharging the ANC Defendants' anticompetitive scheme), are highly relevant and responsive to Plaintiffs' requests for documents relating to, *inter alia*, discussions, plans, and analyses regarding the types of contractual provisions Plaintiffs challenge; financial analyses concerning the operations of Mission Health and competition in the alleged relevant markets; plans, strategy, and

---

[5] The "ANC Defendants" are ANC Healthcare, Inc. f/k/a Mission Health System, Inc., and Mission Hospital, Inc.

analyses on how to leverage their market power to increase profitability by reducing quality or increasing prices; and discussions, strategy, and plans regarding the effects of the COPA and its expected termination well before the acquisition.

## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010). The decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

Courts in the Fourth Circuit consistently affirm the broad scope of discovery under Rule 26. *See, e.g.*, *Wheeler v. BMW of N. Am. LLC*, 2022 WL 301537, at *2 (W.D.N.C. Feb. 1, 2022) ("The rules of discovery are to be accorded broad and liberal construction."); *Williams v. AT&T Servs., Inc.*, 2022 WL 1814630, at *1 (W.D.N.C. June 2, 2022) ("Parties in a civil action enjoy broad discovery" [. . .]; "a party served with discovery requests does not have a right to leave 'gaps' in his or her responses.") (citations omitted). "Relevance is construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Deutsche Bank Nat'l Tr. Co. v. Fegely*, 2020 WL 201048, at *6 (E.D. Va. Jan. 13, 2020) (internal quotations omitted) (noting that the "federal discovery rules" must be given a "broad and liberal construction"). "A party resisting discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations." *Murphy v. Setzer's World of Camping, Inc.*, 2021 WL 2042732, at *1 (S.D.W. Va. May 21, 2021) (compelling discovery over burden objections, where objecting party "did not substantiate this objection" with any detailed facts) (citations and quotations omitted).

## III.  ARGUMENT

The HCA Defendants have unjustifiably refused to produce documents pre-dating the January 31, 2019 Amended and Restated Asset Purchase Agreement

(the "A&R APA") between Mission Health and HCA Healthcare. These requested documents are highly relevant to Plaintiffs' allegations and are proportional to the needs of the case.

### A. The HCA Defendants May Not Withhold Responsive Custodial Documents Pre-Dating the Mission Health Acquisition.

In an effort to conceal from Plaintiffs the relevant negotiations and analyses regarding the Mission Health system, the HCA Defendants unilaterally imposed a start date of February 1, 2019 for the search and collection of custodial documents. Plaintiffs' attempts at compromise—even moving the start date of production four (4) years closer to the HCA Defendants' preferred date—have been rebuffed by the HCA Defendants.[6] Plaintiffs further agreed to consider the HCA Defendants' only counterproposal on the start date—by producing on a go-get basis the "deal file" (a limited tranche of documents from March 2018 through January 2019 regarding the drafting and closing of the A&R APA), the HCA Defendants would be released from searching for pre-acquisition documents. After receiving the "deal file" on September 20, 2024, Plaintiffs promptly reviewed these documents but quickly

---

[6] Plaintiffs' Joint Jul. 18, 2024 Letter to All Defendants, at 2–3 (Ex. B) (offering to move the start date from January 1, 2013 up to January 1, 2016); Plaintiffs' Joint Aug. 28, 2024 Letter to HCA Defendants, at 1–3 (Ex. C) (offering to move the start date up to January 1, 2017); Plaintiffs' Joint Sept. 9, 2024 Letter to HCA Defendants, at 1–2 (Ex. D) (agreeing to consider "deal file" as potential compromise on start date); Plaintiffs' Joint Oct. 8, 2024 Letter to HCA Defendants, at 1–5 (Ex. E) (explaining in detail why the "deal file" was not a sufficient compromise, and reiterating compromise start date of January 1, 2017).

determined that the "deal file" did not contain documents responsive to several of Plaintiffs' Requests.[7] Moreover, as discussed below, even the limited documents in the "deal file" show that the HCA Defendants possess responsive documents in the pre-acquisition time period that have not been produced as part of the "deal file." As such, in this Motion, Plaintiffs request that the Court compel a compromise, ordering the HCA Defendants to produce responsive documents dated between January 1, 2017 and February 1, 2019.

The HCA Defendants continue to insist they possess no non-duplicative, discoverable material pre-dating the A&R APA[8] despite the ANC Defendants agreeing to produce documents dating back to January 1, 2015, and Plaintiffs agreeing—at the HCA Defendants' request[9]—to produce documents dating back to January 1, 2016. In lieu of an explanation for their refusal to compromise, the HCA Defendants have offered rhetoric, calling Plaintiffs' request a "fishing expedition" guided only by "guesswork and wishful thinking."[10] To the contrary, Plaintiffs'

---

[7] Plaintiffs' Joint Oct. 8, 2024 Letter to HCA Defendants, at 1–5 (Ex. E).

[8] HCA Defendants' Oct. 14 2024 Letter to Plaintiffs, at 2–3 (Ex. F).

[9] By requesting documents from Plaintiffs dating back to January 1, 2016, the HCA Defendants seem to agree that conduct and information pre-dating February 2019 is relevant.

[10] HCA Defendants' Oct. 14, 2024 Letter to Plaintiffs, at 2–3 (Ex. F); HCA Defendants' Jul. 26, 2024 Letter to Plaintiffs, at 3 (Ex. G); (quoting *Griffin v. Hooks*, 2023 WL 5662584, at *4 (W.D.N.C. Aug. 29, 2023) (Reidinger, C.J.)). In *Griffin*, the plaintiff sought to depose 23 fact witness whom he believed were beaten while in custody of North Carolina prisons lacking video recording coverage. There, the plaintiff's motion to compel depositions was denied because

requested time period is appropriately tailored to capture the documents and communications that are necessary to prosecute this case.

The pre-acquisition documents that Plaintiffs request and for which the HCA Defendants refuse to search, let alone produce, go to several issues that are highly relevant to both Plaintiffs' allegations and Defendants' available defenses. For instance, Plaintiffs seek documents concerning:

- the HCA Defendants' evaluation and analysis of the types of contractual provisions challenged here;[11]
- the financial condition of and projections for the Mission Health system (including the financial impact of the aforementioned provisions);[12]
- the markets in which Mission Health and now the HCA Defendants operate in Western North Carolina;[13] and
- the COPA, including the effects of the rescission thereof.[14]

By proposing an unreasonable start date of February 1, 2019 and refusing to search the appropriate custodial sources, the HCA Defendants attempt to shield these highly relevant documents from production. The challenged conduct did not arise

_____

he lacked any information from which to base his belief as to whether any of these fact witnesses actually had personal knowledge of the purported beatings. This is easily distinguishable from the dispute in this case because Plaintiffs here are seeking relevant documents that are known to exist or have existed and could only be in the possession of HCA Defendants, not depositions of unidentified individuals regarding unknown events.

[11] Federal Request Nos. 10–17.
[12] Federal Request Nos. 28, 34–35, 38–39, 42.
[13] Federal Request Nos. 57–62.
[14] Federal Request No. 63.

from nothing, beginning *ex nihilo* on the day after Defendants executed the A&R APA. It is axiomatic that a major acquisition follows extensive deliberation and analysis: at least certain of the HCA Defendants were, at a minimum, evaluating, analyzing, and discussing the Mission Health system, its agreements, the impact of the repeal of COPA on the Mission Health business, and the market for healthcare in Western North Carolina, well in advance of execution of the initial nondisclosure agreement in July 2017 or HCA's initial offer in August 2017,[15] and certainly before execution of the acquisition agreement in January 2019.



---

[15] *See, e.g.*, Mark Barrett & Dillon Davis, "We have the Mission Health-HCA contract. Here's what we know about the $1.5B deal," CITIZEN TIMES, Sept. 7, 2018 (https://www.citizen-times.com/story/news/local/2018/09/07/we-have-mission-health-hca-contract-heres-what-we-know-1-5-b-deal/1216570002/) (last visited Oct. 17, 2024); Peter Lewis, "A Done Deal: How Mission Health Wooed HCA", ASHEVILLE WATCHDOG, Oct. 19, 2020 ("On Aug. 12, 2017, Green delivered HCA's offers to buy or partner with Mission to Paulus") (https://avlwatchdog.org/a-done-deal-how-mission-health-wooed-hca/) (last visited Oct. 17, 2024).





**B. Rule 26(b)(1) Supports Production of the Pre-2019 Documents**

Not only does the relevance of these pre-February 2019 documents outweigh the HCA Defendants' burden of producing them, but the considerations in Rule 26(b)(1) also weigh in favor of compelling their production. Fed. R. Civ. P. 26(b)(1) (enumerating particular considerations, including (i) "the importance of the issues at stake in the action," (ii) "the amount in controversy," (iii) "the parties' relative access to relevant information," and (iv) "whether the burden or expense of the proposed discovery outweighs its likely benefit").

First, the unquestionable importance of cost, quality, and availability of healthcare in Western North Carolina weighs in favor of broad discovery. "[C]ourts should carefully scrutinize discovery requests in 'cases in public policy spheres, such as employment practices, free speech, and other matters,' which often 'seek[ ] to vindicate vitally important personal and public values' and 'may have importance far beyond the monetary amount involved.'" *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017) (quoting Fed. R.

---

[18] *See* Plaintiffs' Oct. 8, 2014 Letter to HCA Defendants, at 5 (Ex. E) (proposing these additional pre-2019 custodians); HCA Defendants' Oct. 14, 2024 Letter to Plaintiffs, at 3 (Ex. F) (refusing to search from any additional custodians without justification).

Civ. P. 26 advisory committee's note) (holding that litigation alleging an anticompetitive conspiracy amongst railroad companies to charge supracompetitive prices for rail freight shipping services could result in a favorable ruling that would "benefit all of America's shippers and consumers, saving billions of dollars a year in reduced rail freight charges in the United States," making the "importance of the issues at stake" "weigh in favor of granting" the discovery request).

The public importance of private antitrust litigation is widely recognized by courts.[19] At issue here, the cost, quality, and availability of healthcare is an issue of key public importance—particularly in Western North Carolina, historically lauded for its healthcare services prior to HCA's Mission Health acquisition. Federal Complaint ¶¶ 23, 186; *see also* Amicus Curiae Brief of the State of North Carolina in Support of Plaintiffs, ECF No. 56.1 at 1–2.

---

[19] *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556, 572 n.10 (1982) ("Private suits are an important element of the Nation's antitrust enforcement effort."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("Congress created the treble-damages remedy [. . .] precisely for the purpose of encouraging *private* challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations.") (emphasis in original); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6888488, at *21 (E.D.N.Y. Dec. 16, 2019), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("There is a genuine public interest in bringing private antitrust class actions in order to protect consumers, competition, and businesses, and private antitrust suits often serve as a supplement to government antitrust investigations.") (collecting cases).

Second, while the exact amount in controversy is uncertain in these early stages of discovery, the overcharge damages are likely in the tens or hundreds of millions of dollars, even prior to the statutory trebling of antitrust damages. *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 232 (E.D. Pa. 2014) (finding that in some cases, such as antitrust cases, ESI's benefits "vastly outweigh its costs," because "the issues are important, the financial stakes of both discovery and damages are high, and there are important reasons of public policy justifying broad discovery in antitrust cases, regardless of the result.").[20]

Third, only the HCA Defendants have access to these documents that relate to issues central to Plaintiffs' case. The requested documents specifically target *the HCA Defendants'* evaluation and analysis of the types of contractual provisions challenged here, the relevant markets, and the impact of the COPA's termination. Further, regardless of when the HCA Defendants began participating in the challenged conduct, documents pre-dating challenged anticompetitive conduct are routinely sought and found to be discoverable in an antitrust case like this one, where there is generally a policy of allowing liberal discovery.[21] Indeed, "the

---

[20] *See also Bennett v. 38604 10th St. E., LLC*, No. 20–cv–8858 (DMG) (PVC), 2021 WL 5038757, at *4 (C.D. Cal. July 30, 2021) ("[T]he larger and more complex the case, the more even relatively voluminous discovery may be considered proportional.").

[21] *See, e.g., Arrowpac Inc. v. Sea Star Line*, LLC, No. 3:12-cv-1180-J-32JBT, 2014 WL 12617575, at *3 (M.D. Fla. Sept. 11, 2014) (compelling the responding party to produce the requested pre-conspiracy documents in antitrust case) ("Pre

temporal scope of discovery in antitrust cases should not be confined to the limitations period of the antitrust statutes or the damage period, and plaintiff is ordinarily permitted to discover defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong."[22] Based on the discovered information described above, Plaintiffs believe that a two-year period preceding the earliest date of HCA Defendants' actionable wrong is reasonably tailored to capture the requested relevant information.

---

and post conspiracy information appears to be directly relevant to Plaintiffs' damages because the 'before and after' method discussed above requires such information. Moreover, 'there is a general policy of allowing liberal discovery in antitrust cases.'"); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 & n.12 (D. Kan. 2009) (compelling production of documents outside of alleged geographic market because of the liberal policy favoring broad discovery in antitrust cases, and recognizing that in antitrust cases involving allegations of conspiracy, this liberal policy favoring discovery is particularly appropriate because "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent.").

[22] *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003) (quotations and footnotes omitted) (collecting cases); *see also, e.g.*, *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1143 (4th Cir. 1980) (finding error in part where trial court failed to allow discovery on alleged bid-rigging negotiations that occurred years prior to limitations period); *In re Dockers Roundtrip Airfare Promotional Sales Practices Litig.*, 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."). *See also Kirsch v. Delta Dental*, 2009 WL 10728281, at *2 (D.N.J. Apr. 30, 2009) ("[T]here is 'no general rule which would limit class action discovery solely to the class action period.'") (citation omitted), *aff'd*, 2009 WL 10728227 (D.N.J. Sept. 1, 2009).

Fourth, the HCA Defendants have not articulated any particular burden in producing pre-acquisition documents, and even if they did, the importance of the requested documents far outweighs any claimed burden of adding just two years to their current search.[23] The HCA Defendants have argued that, because certain custodians were employed by Mission Health prior to the acquisition and therefore those custodians' files will be produced from January 1, 2015 given the ANC Defendants' agreement to produce from that date, the HCA Defendants are therefore not obligated to identify additional appropriate custodians or to search for all custodians' pre-acquisition documents. This argument does not hold up to scrutiny, because these custodians (who worked at Mission Health before it was acquired) obviously did not have access to the HCA Defendants' internal custodial communications sent and received prior to the acquisition's closing.

The HCA Defendants have proposed a list of 21 individual custodians whose records are being searched.[24] As best as Plaintiffs can tell, the HCA Defendants

---

[23] *See, e.g.*, *In re Diisocyanates Antitrust Litig.*, 2022 WL 17668470, at *13 (W.D. Pa. Oct. 19, 2022) (compelling further discovery by Defendants over burden objections, given that antitrust cases with large alleged damages require broad discovery) ("Here, the issues at stake warrant broad discovery: the antitrust laws were enacted by Congress to protect the integrity of the markets. The amount in controversy is in the tens if not hundreds of millions of dollars. The defendants have exclusive possession of the overwhelming bulk of relevant information and so may be expected to bear the greater burden in discovery. All parties to this case have substantial resources to devote to discovery.") (citation omitted).

[24] HCA Defendants' Aug. 13, 2024 Letter to Plaintiffs, at 2 (Ex. O).

– 16 –

proposed custodians' work related to the operations of the Mission Health system *after* the HCA takeover, without consideration for location of relevant documents pre-dating the acquisition. This obviously magnifies the significant blind spot in the HCA Defendants' document productions, which the HCA Defendants have refused to address despite Plaintiffs' repeated attempts to compromise.[25]

## IV. CONCLUSION

Federal Plaintiffs and State Plaintiffs jointly respectfully request that the Court order HCA Defendants broaden the scope of their search to include relevant documents dated between January 1, 2017 and February 1, 2019, and to identify and search custodial records for custodians involved in pre-acquisition negotiations with Mission Health, assessment of the Mission Health system, assessment of the healthcare market in Western North Carolina, assessment of the COPA and its expiration, and assessment or strategy regarding profitability of the post-acquisition entity prior to February 1, 2019, including but not limited to the records of ███████████████████████████████████.

---

[25] Plaintiffs' Aug. 28, 2024 Letter to HCA Defendants (Ex. O), at 4–6 (Ex. C) (Plaintiffs identified several issues with the HCA Defendants' proposed custodians, including because of lack of coverage for pre-acquisition HCA Defendant documents); Plaintiffs' Oct. 8, 2024 Letter to HCA Defendants, at 5 (Ex. E) (Plaintiffs reiterate concerns with custodian and specifically inquired about adding ███████████████████████████████ as custodians).

Dated: October 18, 2024

Respectfully submitted,

/s/ Robert N. Hunter, Jr.

Brendan P. Glackin*                    Robert N. Hunter, Jr.
Dean M. Harvey*                        Fred Berry
**LIEFF CABRASER HEIMANN &**           John F. Bloss
**BERNSTEIN, LLP**                     **HIGGINS BENJAMIN, PLLC**
275 Battery Street, Suite 2900         301 North Elm Street, Suite 800
San Francisco, CA 94111                Greensboro, NC 27401
Phone: (415) 956-1000                  Phone: (336) 273-1600
bglackin@lchb.com                      Facsimile: (336) 274-4650
dharvey@lchb.com                       rnhunterjr@greensborolaw.com
                                       fberry@greensborolaw.com
Daniel E. Seltz*                       jbloss@greensborolaw.com
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor           Eric L. Cramer*
New York, NY 10013                     Andrew C. Curley*
Phone: (212) 355-9500                  Jacob M. Polakoff*
dseltz@lchb.com                        J. Taylor Hollinger*
                                       **BERGER MONTAGUE PC**
                                       1818 Market Street, Suite 3600
Robert E. Litan*                       Philadelphia, PA 19103
Daniel J. Walker*                      Phone: (215) 875-3000
**BERGER MONTAGUE PC**                 ecramer@bm.net
1001 G Street, NW                      acurley@bm.net
Suite 400 East                         jpolakoff@bm.net
Washington DC, 20001                   thollinger@bm.net
Phone: (202) 559-9745
rlitan@bm.net
dwalker@bm.net

*Counsel for Plaintiffs and the Proposed Class*
*Admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I, Robert N. Hunter, Jr., certify that on this 18th day of October, 2024, a true and correct copy of Plaintiffs' Memorandum in Support of Joint Motion to Compel the HCA Defendants to Produce Documents (filed under seal) was served via e-mail on the following counsel of record.

/s/ Robert N. Hunter, Jr.
Robert N. Hunter, Jr.
*Counsel for Plaintiffs*
*and the Proposed Class*

Phillip T. Jackson (N.C. Bar No. 21134)
John Noor (N.C. Bar No. 43102)
David Hawisher (N.C. Bar No. 55502)
Bryant G. Cross (N.C. Bar No. 60834)
ROBERTS & STEVENS, PA
P.O. Box 7647
Asheville, NC 28802
Phone: (828) 252-6600
pjackson@roberts-stevens.com
jnoor@roberts-stevens.com
dhawisher@roberts-stevens.com

Sara Razi*
Abram Ellis*
SIMPSON THACHER & BARTLETT LLP
900 G Street NW, Ste. 900
Washington DC, 20001
Phone: (202) 636-5500
sara.razi@stblaw.com
aellis@stblaw.com

*Counsel for the HCA Defendants*

Dana C. Lumsden (N.C. Bar No. 32497)
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Telephone: 704-338-6034
Facsimile: 704-332-8858
dlumsden@bradley.com
ahobson@bradley.com

Kenneth M. Vorrasi*
Jonathan H. Todt (N.C. Bar No. 52952)
Alison M. Agnew*
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Ste. 1100
Washington, D.C. 20005
Telephone: 202-842-8800
Facsimile: 202-842-8465
kenneth.vorrasi@faegredrinker.com
jonathan.todt@faegredrinker.com
alison.agnew@faegredrinker.com

– 19 –

Paul H. Saint-Antoine*
**FAEGRE DRINKER BIDDLE &
REATH LLP**
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Telephone: 215-988-2700
Facsimile: 215-988-2757
paul.saint-antoine@
faegredrinker.com

*Counsel for the ANC Defendants*

*Admitted *pro hac vice*